### In re HALEY.

### In re HUTCHINSON & WILMOTH.

#### (Circuit Court of Appeals, Sixth Circuit. January 16, 1908.)

#### No. 1,722.

1. BANKRUPTCY—CORPORATIONS—SUIT AGAINST STOCKHOLDERS—SUMMARY PROCEEDINGS.

Where the organizers of a corporation fraudulently overvalued its assets in the issuance of stock, and the corporation's trustee in bankruptcy claimed that H., a nonresident stockholder, who paid substantially all the money which went into the concern, had notice of the fraud, the trustee could not subject her to liability for the debts of the corporation on an order to show cause, issued on a petition in the bankruptcy proceedings, delivered by mail and by publication; such relief being obtainable only in a suit in equity based on personal service in the forum where she was subject to suit.

2. SAME—SUITS BY TRUSTEE.

A suit by the trustee of a bankrupt corporation to compel a stockholder to pay corporate debts because of her alleged participation in a fraudulent overvaluation of the corporation's assets in payment for stock was not a case of a preferential or fraudulent transfer within Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], as amended by Act Cong. Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1024], giving courts of bankruptcy jurisdiction in suits for the recovery of property under sections 60b, 67e, and 70e (30 Stat. 562, 564, 565 [U. S. Comp. St. 1901, pp. 3445, 3449, 3452], 32 Stat. 799, 800 [U. S. Comp. St. Supp. 1907, pp. 1031, 1032]), relating to fraudulent and preferential transfers, but was a suit of a plenary nature, of which the bankruptcy court had no jurisdiction except by defendant's consent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 410–414.]

Petition to Review Order of the District Court of the United States for the Southern Division of the Eastern District of Michigan, in Bankruptcy.

A. W. Sempliner, for petitioner.
B. B. Selling, for respondent.

Before LURTON and RICHARDS, Circuit Judges, and KNAP-PEN, District Judge.

RICHARDS, Circuit Judge. On the 13th of April, 1906, Hutchinson & Wilmoth, a Michigan corporation, was adjudicated an involuntary bankrupt, and on September 25, 1906, Edgar E. Heavenrich, trustee for such corporation, filed a petition upon which Judge Swan of the District Court for the Eastern District of Michigan, issued an order to show cause. This order was directed more especially against Carrie W. Haley, a resident of Paris, Ky., and it was served on her by mail and by publication in the Detroit Legal News. On October 22, 1906, following such service, Carrie W. Haley filed a motion to set aside the service, which was overruled by the court below, and this petition is for the purpose of reviewing such decision.

The petition upon which the order to show cause was based, which was served on Carrie W. Haley by mail and by publication, stated, in substance, that the corporation of Hutchinson & Wilmoth was organized in Michigan in March, 1905, for the purpose of conducting a general merchant tailoring business, with its principal office or place of business at Detroit. The capital stock was $15,000, composed of 1,500 shares of the par value of $10 each. The articles of incorporation stated that the amount of capital stock subscribed was $15,000, and the amount actually paid in at the date of the filing of the articles on March 14, 1905, was $15,000, of which $1,500 had been paid in cash, and $13,-500 had been paid in the stock, fixtures, and tools belonging to the tailoring business formerly conducted at No. 34 Fort street, Detroit Mich., by Frank A. Hutchinson & Co. The stockholders were Frank A. Hutchinson, 750 shares, Charles R. Wilmoth, 749 shares, and Norval A. Hawkins, 1 share. All the stockholders live in Detroit. The petition in bankruptcy was filed April 13, 1906, and the adjudication took place April 13, 1906. The claims proved against the estate aggregated $9,-826.06. A dividend of 10 per cent. upon the claims has been paid, and the trustee had on hand at the filing of the petition the sum of $976.45, being the proceeds of the tangible assets of the bankrupt.

There are claims aggregating $10,099.78, to which objections have been filed. The trustee represents that it will take more than $9,000 to pay the balance of the allowed claims, and, should the claims which have been objected to be allowed, it will take more than $10,000. Prior to the organization of the bankrupt corporation, there existed a corporation in Detroit known as the "Frank A. Hutchinson & Co.," which had taken over the business and assets of Frank A. Hutchinson, who before that time was insolvent. The assets of the Frank A. Hutchinson & Co. consisted of stock, fixtures, and tools, were appraised by Nathan Finley and Phil Curtis, persons selected by Frank A. Hutchinson and Charles R. Wilmoth, and the appraisal did not exceed $5,000, which was their full value. At the time of the organization of the bankrupt corporation, in March, 1905, these assets, worth not more than $5,000, were taken at a valuation of $13,500, although this was well known to the original incorporators and also to Carrie W. Haley and J. Walter Drake, her attorney. The trustee represents that the assets of the F.

A. Hutchinson & Co. were purchased for $2,500, which was distributed among the creditors of that company and Frank A. Hutchinson personally. These assets were afterwards turned in for $13,500.

At the first meeting of the bankrupt corporation on March 11, 1905, Hutchinson, Wilmoth, and Hawkins, the incorporators, were elected directors for one year, and a resolution was adopted accepting these assets for the sum of $13,500 in payment of the stock of the incorporators amounting to 1,350 shares. This transaction was fraudulent and was so known to the incorporators and J. Walter Drake, their attorney, and the trustee represents, upon information and belief, that its fraudulent character was known to Carrie W. Haley, the mother-in-law of Charles R. Wilmoth, who advanced $2,500 to purchase the said stock. Of the 749 shares of the bankrupt corporation subscribed for by Wilmoth 375 shares became the property of Carrie W. Haley, under an agreement made January 10, 1906, between Wilmoth and her, which witnesses that whereas 1,197 shares of the stock had been transferred from time to time by Wilmoth to Haley and by Haley to Drake, as trustee for her, and whereas the other 3 shares were held by Wilmoth, Hawkins, and Drake, and whereas Wilmoth was indebted to Haley in the sum of $2,225, with interest, now, therefore, it was agreed and understood that Carrie W. Haley is the owner of 749 shares of stock held by Drake as trustee, and that the remaining 748 shares of stock held by Drake, as trustee, is owned by Wilmoth and was transferred to Haley to secure the payment of a note of $2,225, and that Haley is to hold said 748 shares as collateral for said note.

The trustee represents that Norval A. Hawkins is an expert bookkeeper, and, realizing that it was a fraud to charge up to the creditors $13,500 of assets which cost only $2,500, and which were appraised at less than $5,000, he charged $8,000 to the account of good will. This charge was fraudulent, as was well known to the incorporators and directors, and to Carrie W. Haley and J. Walter Drake. The capital stock of the Hutchinson & Wilmoth Company was continuously impaired from the moment of its incorporation; there never being a time when it did not owe at least $8,000 more than the value of its assets. The capital stock was still further impaired before December 9, 1905, by Frank A. Hutchinson withdrawing the sum of $2,500 in cash, and converting it to his own use, a fact known to all the parties. Prior to this date, December 9, 1905, Frank A. Hutchinson pledged unto Carrie W. Haley, 200 of the 749 shares of stock standing in his name. On December 9, 1905, Carrie W. Haley caused these 200 shares of stock thus pledged to her as collateral to be canceled, and a new certificate for 200 shares issued to her in her own name. On that day the remaining 749 shares of stock of Frank A. Hutchinson were transferred to J. Walter Drake, as trustee, for Carrie W. Haley. At the time this was done $750 were paid out of the assets to Frank A. Hutchinson, and he was released from the overdraft of $2,500, or thereabouts, and the personal creditors of Hutchinson, who were debtors to the corporation, were credited with the amount of their claims against Hutchinson. By reason of these transactions, which were carried on with the full knowledge of all the parties, the entire capital stock of the bankrupt cor-

poration was wiped out. On January 10, 1906, Carrie W. Haley owned all the stock of the bankrupt corporation with the exception of three shares held by Charles R. Wilmoth, Norval A. Hawkins, and J. Walter Drake. At that time there was an agreement between Wilmoth and Carrie W. Haley whereby the latter agreed to transfer 748 shares to Wilmoth upon the payment of $2,225.

The trustee represents that at the present time Carrie W. Haley is the actual owner of 1,497 shares; that J. Walter Drake has no interest in the stock he holds except as attorney or trustee for her. The trustee represents that, unless the owners of the capital stock are compelled to pay for the stock actually issued for them and turned back that which they wrongfully caused to be taken from the corporation, the creditors will suffer greatly. At the inception of the bankrupt corporation there was put in actual property at the highest $6,500 upon the total subscription of $15,000. The assets obtained from the F. A. Hutchinson & Co., which cost $2,500, should be considered worth $5,000, so there was subscribed $8,000 of capital which is still due and unpaid for. Assets of the value of $3,000 belonging to the bankrupt were taken and used to acquire the stock of Frank A. Hutchinson, which was thereupon transferred to Carrie W. Haley; and the trustee represents that she therefore owes the further sum of $3,000 received in that transaction.

"For as much as your petitioner is without remedy, except in a court of equity, your petitioner respectfully prays," if the court should hold any contract was made by the transaction of March 11, 1906, whereby the bankrupt corporation purchased from the directors the stock, etc., of the Frank A. Hutchinson & Co., for $13,500, which had only cost the incorporators $2,500, that such contract be set aside; that it be declared that said stock was overvalued, and there still remains due on the original stock subscription the difference between $13,500 and the actual value of the property of the old concern; that an assessment sufficient in amount to pay off all the indebtedness of the bankrupt corporation and the expenses of this proceeding be levied on the original subscribers to the capital stock, or upon their transferees, and that Carrie W. Haley be declared the owner of all the stocks standing in the name of J. Walter Drake, trustee, and as such be declared personally liable for such assessment; that Carrie W. Haley, J. Walter Drake, Charles R. Wilmoth, and Norval A. Hawkins be required to pay to the trustee the value of the assets turned over to Frank A. Hutchinson & Co. for stock transferred by him to Carrie W. Haley and J. Walter Drake, as trustee. "Your petitioner further prays that all the stockholders of the said corporation, all the subscribers to the capital stock of said corporation, to wit, Carrie W. Haley, Charles R. Wilmoth, Frank A. Hutchinson, Norval A. Hawkins, and J. Walter Drake, trustee, be required to show cause * * * why the assessment and call prayed for * * * should not be made and why the relief prayed for should not be granted," etc.

The above contains the substance of the petition on which service of an order to show cause was made by mail and publication upon Carrie W. Haley. The sole question is whether she could be brought into

court, and compelled to show cause on a petition setting out the facts and praying the relief which this petition did. It will be observed that it was not a petition which simply demands an assessment and call upon the stock of the bankrupt corporation, as in the case of Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968. It is clear from a reading of the petition that Hutchinson and Wilmoth, who organized the corporation and held all the stock except one share, are bankrupts, and that the attempt of the trustee is to bring in Carrie W. Haley, a nonresident, the mother-in-law of Wilmoth, who it seems paid substantially all of the money which went into the concern, as a defendant, and compel her to answer averments which charge her with being a party to certain fraudulent acts which it is alleged, subjected her to liability for the debts of the corporation. We do not think this can be done without serving her personally and giving her the opportunity of defending herself in the forum where she is subject to suit. Toland v. Sprague, 12 Peters, 300, 328, 9 L. Ed. 1093. In the ordinary case, where an assessment and call is made on the stock of a bankrupt corporation, the order to show cause demands an investigation by the court in charge of the bankrupt into the necessity and propriety of making the assessment and call; and afterwards, when a suit is brought to collect the assessment, the stockholder has the opportunity of presenting his defense in the court in which it is necessary, in order to obtain jurisdiction, to serve him personally. But in the present case, as we have suggested, and as the abstract we have made of the petition shows, there is presented against Carrie W. Haley a suit in equity which she ought not to be compelled to answer, except in the proper forum, and after that personal service which the law accords her as a means of protecting her rights. A court of bankruptcy has no jurisdiction of a suit at law or in equity brought by a trustee to recover property or collect debts, or to set aside transfers of property alleged to be fraudulent, except by consent of the defendant. Loveland on Bankruptcy, § 20, p. 97, section 20a, p. 100, et seq.; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. By the amendment of February 5, 1903, such court was given jurisdiction of suits for the recovery of property under section 60b, section 67e, and section 70e. Act July 1, 1898, c. 541, 30 Stat. 562, 564, 565 [U. S. Comp. St. 1901, pp. 3445, 3449, 3452], as amended by Act Feb. 5, 1903, c. 487, §§ 13, 16, 32 Stat. 799, 800 [U. S. Comp. St. Supp. 1907, pp. 1031, 1032]. But this is not a case of a preferential or fraudulent transfer under those sections. The suit outlined in the bill is therefore one of a plenary nature of which the bankruptcy court has no jurisdiction except by consent of the defendant, of which there is no pretense here. The motion to set aside the service by mail and publication of the order to show cause should therefore have been sustained.

The judgment of the court below is reversed, and the case remanded, with directions to set aside the service, and to dismiss the petition.