Petition of STUART et al.

## In re NATIONAL ARTIFICIAL SILK CO.

(Circuit Court of Appeals, Sixth Circuit.   May 6, 1921.)

No. 3511.

1. **Bankruptcy ⊙250(1), 252—Courts ⊙366(7)—Whether stockholders' liability is asset to corporation or creditors is question of state law; stockholder's liability enforceable by bankruptcy trustee; bankruptcy court may authorize compromise of stockholder's liability.**

The question whether the liability of stockholders of a bankrupt corporation for the unpaid portion of the purchase price of the stock is an asset of the corporation or belongs to the creditors only depends on the laws of the state where the corporation was organized, and under the laws of Ohio as settled by the decision of its Supreme Court the liability belongs to the corporation, and may be enforced by the trustee in bankruptcy for the benefit of the general creditors, so that the bankruptcy court has jurisdiction generally, under Bankruptcy Act, § 27 (Comp. St. § 9611), to authorize a compromise of such liability.

2. **Bankruptcy ⊙252—Trustee has power to compromise controversy in which all creditors have not an equal interest.**

Under Bankruptcy Act, § 27 (Comp. St. § 9611), authorizing the trustee with the approval of the court to compromise any controversy, the trustee's authority is unlimited, and includes the authority to compromise controversies in which all creditors of the bankrupt have not the same interest.

3. **Bankruptcy ⊙252—Uncertainty and cost of litigation considered in determining advisability of compromise.**

In determining the advisability of a compromise, the trustee in bankruptcy and the court had the right to take into account the uncertainty and cost of litigation to enforce the liability, as well as the existence of unsettled questions of liability.

4. **Bankruptcy ⊙252—Compromise of stockholders' liability to avoid defense to some creditors' claims held proper exercise of discretion.**

The approval of a compromise between the trustee in bankruptcy and the stockholders of the bankrupt corporation was a proper exercise of discretion, where the stockholders asserted knowledge by some of the creditors of the terms on which the stock was purchased, which would defeat the stockholders' liability as to such creditors, since the trustee could not split up the estate's cause of action, and bring suit in the interest alone of creditors who had no knowledge of the facts, and by the compromise the trustee realized for all creditors three-fourths as much as could have been realized by successful litigation.

5. **Bankruptcy ⊙446—Petition to revise does not authorize substitution of court's discretion for that of trustee.**

In a proceeding to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608), questions of law only are presented, and the appellate court is not authorized to substitute its discretion for that of the trustee in making a compromise with stockholders of the bankrupt corporation and of the District Court in approving it.

6. **Bankruptcy ⊙252—Approval of compromise by District Court held not a determination of stockholders' defenses.**

The action of the District Court in approving a compromise by the trustee with the stockholders of a bankrupt corporation is not a judicial determination of the legal defenses made by the stockholders against their liability, and therefore not subject to the objection that such determination was beyond the court's jurisdiction.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Bankruptcy ⬡⟶447—Appellate court held without jurisdiction to direct preference to certain creditors against receipts from compromise.**

> The Circuit Court of Appeals cannot, on petition to revise an order approving a compromise between trustee in bankruptcy and stockholders of bankrupt corporation, direct a modification of the order, so as to permit the petitioners for revision to obtain in the court below an adjudication of their claimed priorities over other creditors, based on the claim that petitioners were ignorant of the terms of the sale of stock, and therefore entitled to recover from the stockholders, notwithstanding the defense that other stockholders had extended credit with knowledge of the terms of such sale.

Petition to Revise an Order of the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

In the matter of the National Artificial Silk Company, bankrupt. Petition by James L. Stuart and another to revise an order of the District Court approving the compromise with the stockholders of the bankrupt corporation. Affirmed.

H. H. McKeehan, of Cleveland, Ohio, and F. W. Miller, of Pittsburgh, Pa. (Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, Robb & Miller and F. W. Miller, all of Pittsburgh, Pa., and H. H. McKeehan, of Cleveland, Ohio, on the brief), for petitioners.

A. V. Cannon, of Cleveland, Ohio (White, Johnson, Cannon & Spieth, of Cleveland, Ohio, on the brief), for respondent.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The bankrupt is a corporation organized under the laws of Ohio, with a permissible capital stock of $5,000,000, partly preferred and partly common; the shares of each class being of a par value of $100 each. The greater part of the outstanding stock was sold by the corporation at a price of $100 for one share of preferred stock plus one-half share of common stock, the stock being issued under arrangement between the corporation and the purchasing shareholders as fully paid and nonassessable. Debts amounting to $391,037 were proven against the bankrupt's estate, on which there were paid from its assets dividends amounting to 43⅓ per cent., leaving an unpaid balance of $221,588, with only about $7,500 left in the hands of the trustee. The referee accordingly ordered an assessment against stockholders of 60 per cent. This order is still pending in the District Court on petition to review. Later the referee, after notice to creditors, approved a proposed compromise settlement with the stockholders at $25 for each share of common stock not previously in fact fully paid for. This order was confirmed by the District Judge, with a modification not here important. This proceeding is to revise that order.

The claim of petitioner Stuart had been allowed in the sum of $75,000, and that of the Sturtevant Company in the sum of $5,500, on each of which claims the dividends above mentioned had been paid. The primary ground of attack upon the compromise order is that the

right to collect unpaid subscriptions for capital stock is not an·asset of the corporation, but belongs solely to creditors, and thus that there was no jurisdiction or authority to make or sanction the compromise.

[1] Whether the liability in question is a corporate asset or belongs to creditors only depends upon the laws of Ohio. Converse v. Hamilton, 224 U. S. 243, 253, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Kiskadden v. Steinle (C. C. A. 6) 203 Fed. 375, 378, 121 C. C. A. 559; Courtney v. Croxton (C. C. A. 6) 239 Fed. 247, 249, 152 C. C. A. 235. Under the laws of that state, as settled by the decision of its Supreme Court, and as held by this court, the liability in question belongs to the corporation, and may be enforced by the trustee in bankruptcy for the benefit of general creditors. Gates v. Tippecanoe Stone Co., 57 Ohio St. 60, 48 N. E. 285, 63 Am. St. Rep. 705; Kiskadden v. Steinle, supra, 203 Fed. at page 378 et seq., 121 C. C. A. 559. The bankruptcy court thus had jurisdiction generally, under section 27 of the act (Comp. St. § 9611), to authorize a compromise of the stockholders' liability for unpaid stock subscriptions. But petitioners' objections to the exercise of such jurisdiction are not merely general.

It appears from the referee's certificate of facts and opinion that the order for assessing stockholders was vigorously resisted by those representing three-fifths of the capital stock involved, and upon the contentions, first, that certain of the bankrupt's creditors were not entitled to participate in any amount realized from the assessment for the reason that they gave credit to the bankrupt with knowledge of the terms on which the stock was sold; and, second, that the claims of certain creditors were incurred prior to the time the stock was so issued. The referee was impressed with the seriousness of these defenses and of the existence of ample ground for belief that the contesting stockholders seriously intended to pursue that defense unless compromise were reached. He found that if the 60 per cent. assessment were sustained, about $214,000 gross would be realized therefrom, assuming that all would pay; that under the proposed compromise stockholders would pay gross more than $140,000, which would insure to creditors, above further expenses and administration costs, an amount which added to previous dividends would net not less than 75 per cent. of all claims. The referee was persuaded to favor the compromise by the considerations just stated, and by the belief that thereby the estate would be saved considerable expense of litigation and creditors given immediately a definite amount, believing it for their interest to receive presently a smaller amount as against a mere possibility of a larger sum, and in the face of the possibility of an even less amount than the compromise would insure, and the fact also that the petitioners, who alone were opposing the compromise, represented but a trifle over 20 per cent. of the total amount of indebtedness.

The chief vice in the compromise, as asserted by petitioners, is that it involves the rights of the creditors of the bankrupt, as among themselves, and not merely the claims of the bankrupt estate against persons indebted to it. It is argued that no defense is made by the stock-

holders against the right of recovery on behalf of petitioners, at least, and that they are therefore entitled to be paid in full, whatever the result of the stockholders' defense may be; that possibly petitioners are the only creditors entitled to the benefit of the stockholders' liability; that the trustee is such only for the creditors entitled to share in the fund realized; that only such creditors should be permitted to have any voice in the management of the collection from the stockholders, and that if it is uncertain (as petitioners concede it is)[1] what creditors are entitled to the benefit of the stockholders' liability, such question should be determined in advance of considering the question of compromise; that in considering the question of assessing stockholders, both the referee and the bankruptcy court are limited to a determination whether or not an assessment should be made and the amount thereof; and that in the instant case the referee exceeded his authority by undertaking to judicially determine the legal defenses of the stockholders as against their liability, which were more properly interposable by the stockholders only in a plenary suit against them by the trustee.

[2] In our opinion the considerations urged by petitioners do not imperatively deny jurisdiction to make the compromise in question. The authority to compromise conferred by section 27 of the Bankruptcy Act is in terms unlimited:

"The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate."

[3] The section clearly does not limit the right of compromise to controversies in which all creditors have the same interest. Conflicts of interest between creditors of a bankrupt's estate are, to say the least, not unusual. In determining the advisability of compromise, the trustee and the court had the right to take into account the uncertainty and cost of litigation, as well as the existence of unsettled questions of liability. Petition of Baxter (C. C. A. 6) 269 Fed. 344, 349, certiorari denied by Supreme Court (April 25, 1921) 255 U. S. ——, 41 Sup. Ct. 535, 65 L. Ed. ——; In re Kranich (D. C.) 174 Fed. 908 (opinion by Judge McPherson).

[4] The fact (which we assume for the purposes of this opinion) that the stockholders had no effective defense against the claims of petitioners, and others (if any) similarly situated, does not, in our opinion, exclude the exercise of discretion as to compromise. Assuming that the stockholders affirmatively recognized a liability to or on account of petitioners (although that does not clearly appear), to say the least it is not shown that the stockholders were willing to pay over to the trustee the amount to which either petitioners alone, or petitioners and others similarly situated, claimed to be entitled, reserving their defense as to the remaining creditors; nor does it appear which ones of the creditors, other than petitioners, and in what amounts, were situ-

[1] See Gates v. Tippecanoe Co., supra, and Thoms v. Goodman (C. C. A. 6) 254 Fed. 39, 165 C. C. A. 449.

ated similarly to them. The trustee was confronted by a condition; he could not split up the estate's cause of action, and bring separate suit in the interest alone of petitioners, or in the interest only of petitioners and those believed by the trustee to be similarly situated. He must sue, if at all, for the benefit of all creditors, unless those who clearly had no rights. He had no authority to decide for himself, as against claims of other creditors to the contrary, that petitioners and others similarly situated were the only ones entitled to relief. He could not accept, in discharge pro tanto of stockholders' liability, even voluntary payments for the benefit of petitioners and those whom he thought were similarly entitled, unless it was clear that the unpaid and enforceable stockholders' subscriptions were sufficient to provide for all creditors entitled. Whether the trustee did so or not, he had the right to take into account the possibility that a recovery merely on account of the claims of petitioners might, under the bankruptcy law be distributable among all creditors,[2] as well as the fact that no creditors situated similarly to petitioners (if there were any) objected to the compromise, and the further fact that if at the end of the litigation recovery should be had only on account of petitioners' claims and entirely for their benefit, the expenses of litigation might reduce their net recovery to less than reasonably assured under the compromise, which was expected to realize a net aggregate (taking into account prior dividends), without litigation, three-fourths as great as by the proposed assessment, after successful litigation.

[5, 6] It is true that the compromise is on the basis that all creditors shall share equally, but we scarcely need say that this proceeding to revise under section 24b of the act (Comp. St. § 9608) presents questions of law only; it does not authorize us, even if we were so disposed, to substitute our discretion for that of the trustee and the court, who were charged with the administration of the estate. We cannot, as matter of law, say that the trustee and the court have, in adopting this compromise, exceeded the limits of reasonable discretion, taking into account all the considerations to which attention has been called. Setting to one side questions of the legal right of the respective classes of creditors (in the absence of compromise) to participate in the recovery from stockholders, not only may it well be that no compromise was possible unless all creditors share equally, but presumably the trustee and the court regarded such compromise for the best in-

---

[2] In Globe Bank v. Martin, 236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583, it was held that the proceeds of lands conveyed by the bankrupt in fraud of creditors, and recovered by the trustee, were distributable under the bankruptcy among all creditors, and not alone those existing at the date of the fraudulent transfer but subsequent thereto, notwithstanding the statutes of Kentucky, in which the lands were situated, permitted the setting aside of such transfer in the interest of those creditors only who were such at the time the transfer was made; and although the property so conveyed had been attached within four months of bankruptcy by creditors of the latter class. Whether under the Bankruptcy Act (Comp. St. §§ 9585–9656) less favorable consideration would, as applied to this case, be given general creditors we are not called upon to decide.

terest, not only of creditors generally, but of each class of creditors.[3] We do not think the action of the District Court can properly be said to amount to a judicial determination of the legal defenses made by the stockholders against their liability.

Assuming that, except for the bankruptcy, petitioners would be entitled to preferential rights as against stockholders, their present plight is, in our opinion, but a misfortune incident to bankruptcy, which in this case creates a situation more or less artificial, due to the fact that petitioners can proceed only through the trustee in a proceeding for the collection of a debt as owing to the bankrupt.

[7] It results from these views that the order approving the compromise should, in our opinion, be affirmed, and that we are not at liberty to direct a modification of the order, so as to permit petitioners to obtain in the court below an adjudication of their alleged priorities over other creditors, nearly 80 per cent. of whom have assented to or acquiesced in the order of compromise, and presumably upon the theory of ratable distribution in the amount realized thereby, and as to whom any departure therefrom would be unjust.

---

[3] It is stated in respondent's brief, and without criticism, that the trustee has already collected from stockholders more than $125,000 under the compromise order. Manifestly, if this order is reversed, these collections must all be returned, and resort had to litigation.