**SPEAKMAN v. BERNSTEIN.**

No. 6436.

Circuit Court of Appeals, Fifth Circuit.

June 8, 1932.

William D. Tatlow, of Springfield, Mo., Allen McReynolds, of Carthage, Mo., and Sidney M. Cook, of Shreveport, La., for appellant.

Robert A. Hunter, of Shreveport, La., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Speakman, as trustee in bankruptcy of Tex-la-homa Oil Corporation, was denied a recovery at law by the judge sitting without a jury, for $380,000, claimed against Bernstein as due on shares of preferred stock originally issued to him jointly with one Brown; and the trustee appealed. Bernstein died pending the appeal, and his executors have been made parties.

The Tex-la-homa Oil Corporation was organized under the laws of Delaware, and those laws primarily control the liability of subscribers to its stock. Harrigan v. Bergdoll, 270 U. S. 560, 46 S. Ct. 413, 70 L. Ed. 733. The Constitution of Delaware, § 3, art. 9, provides: "No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation." But General Corporation Law, § 14 (Rev. Code Del. 1915, § 1928), provides that stock so paid for is fully paid, and, in the absence of fraud, the judgment of the directors shall be conclusive as to the value of the labor, real estate, or leases thus paid in. If stock is issued whose full par has not been paid to the corporation, assessment for the deficiency may be made when necessary to pay creditors against the first taker, or against any other holder of the stock with notice. Bowen v. Imperial Theatres, 13 Del. Ch. 120, 115 A. 918; Peters v. U. S. Mortgage Co., 13 Del. Ch. 11, 114 A. 598; John W. Cooney Co. v. Hotel Co., 11 Del. Ch. 286, 101 A. 879. The no par common stock it is conceded can be given away, since creditors cannot be misled as to the paid-in capital of the corporation by its issuance.

Of the several contentions made by Bernstein and sustained, one alone need be stated and decided, for it goes to the merits and is sufficient to sustain the judgment. That contention is that, if it be assumed as the trustee contends that the contract under which the stock was issued is Bernstein's contract, nevertheless the stock was in fact fully paid, and nothing is owing in respect of it on a just settlement of that contract. The pertinent facts as found by the court on sufficient evidence are these: On January 4, 1919, Bernstein and Brown executed an option to Crescent Oil Company, offering to sell it Louisiana oil leases and other property in return for stock of Crescent Oil Company and money payable on stated terms all amounting to $3,150,000. This option was assigned to J. O. Mitchell, who with his associates on January 28, 1919, organized the Tex-la-homa Oil Corporation. On February 10, 1919, Mitchell transferred his option to this corporation and obtained on February 14th an addendum to the option under which Bernstein and Brown offered to accept 15,200 shares of preferred stock of Tex-la-homa Oil Corporation, par $100, and 15,200 shares of common stock of no par value, in settlement of installment payments named in the option to an amount of $1,140,000. $2,010,000 remained to be paid in money, part cash and part in installments running to 18 months, but the property was to be deeded on delivery of the stock and payment of $510,000. Acceptance of the option was to be by writing delivered to Bernstein or Brown. On February 21, 1919, the directors of Tex-la-homa Oil Corporation resolved that "The offer set forth in addendum

to the option contract of January 4th, 1919," be accepted, and that the stock be issued to Bernstein and Brown, but no written acceptance was transmitted to them. On the contrary, in the same meeting the president and the secretary were "authorized, directed and instructed to purchase from the Mohawk Oil Company in the name of this corporation all the property described in the option of date January 4, 1919, between E. M. Brown and E. R. Bernstein on the one part and John O. Mitchell on the other, the said property having subsequent to the said option been assigned to the said Mohawk Oil Company subject to the terms thereof" "for the following consideration: $510,000.00 in cash, 15,200 shares of preferred stock in this Company, 35,200 shares of common stock, no par value, and cash to be paid as follows:" $200,000 on the 15th of each alternate month, beginning with June 15, 1919, until $1,500,000 shall be paid, with interest from date at 6 per cent. On March 12, 1919, a formal deed was passed, signed by Mohawk Oil Company and by Tex-la-homa Oil Corporation, expressing these exact terms; the Mohawk Oil Company acknowledging the receipt of the $510,000 cash and of the stock and conveying the property to Tex-la-homa Oil Corporation. Bernstein and Brown owned all the stock in Mohawk Oil Company, and the stock issued by Tex-la-homa Oil Corporation was in fact delivered to them. Tex-la-homa Oil Corporation afterward made further payments and became entitled to credits amounting to about $800,000, but a balance of about $700,000 remains unpaid. Bernstein by assignment owns this claim.

We may assume as contended by the trustee that, notwithstanding the use of the name of Mohawk Oil Company, the contract was really that of Bernstein and Brown, who have its burdens and its benefits. Nevertheless it remains true that the contract is not to be found in the amended option, for that was a mere offer until accepted by a writing delivered according to its terms, which never happened. The contract resulted from acceptance of the proposal of Tex-la-homa Oil Corporation which, though quite similar in its terms to those contained in the option, was still materially different. It was integrated into a binding contract by the formal deed of March 12, 1919. That writing on principles familiar alike to the common law and the law of Louisiana under which it was executed is the exclusive evidence of the final agreement. Under it and in pursuance of it the stock was delivered and accepted. The terms of the option never became binding on Tex-la-homa Oil Corporation. It cannot therefore be contended that the preferred stock of par value $1,520,000 was taken to pay obligations of the Tex-la-homa Oil Corporation of $1,140,000 as was proposed in the amendment of the option. According to the deed of March 12, the property was conveyed as a whole for one general consideration consisting of the two blocks of stock and $510,000 paid cash, and $1,500,000 to be paid in the future. If the contention of the trustee be allowed that the property was valued by the directors at $3,150,000 in the negotiations, and that no different value was fixed by them in the final transaction, and that the preferred stock must be put at par by requirement of the law and could not be disposed of by the corporation for less, it results that the value of the property is less than the aggregate consideration promised by $380,000. This result, involving an issue of stock, would be in violation of the law of Delaware, and, if the consideration had been fully paid by the corporation a repayment of this difference would be in order. But $700,000 is still unpaid. If Bernstein were attempting to collect this balance, the shortage of consideration might be set up to defeat him pro tanto. It is allowable in a settlement of the contract to charge to him the stock received at its par value, but not allowable to withhold the $700,000 balance and also recover as for a supposed undervaluation of the stock. The value received by the corporation is always to be accounted for. Holcombe, Trustee, v. Trenton White City Co., 80 N. J. Eq. 122, 82 A. 618, 619. In the property valued as the directors valued it, made conclusive by the statute of Delaware, since fraud is not found, the corporation has received the full value of its par stock issued and of all cash paid and $320,000 in addition which it should still pay. That Bernstein as the court held is barred by limitation from asserting any claim against the bankrupt corporation for this balance, although because of the recency of the assessment on the stock the trustee is not barred, does not alter the result. Bernstein's defensive right of recoupment under the contract remains so long as any right under that same contract is urged against him offensively regardless of limitation or prescription. Lastrapes v. Rocquet, 23 La. Ann. 68; Morrow v. Hanson, 9 Ga. 398, 54 Am. Dec. 346; Williams v. Neely (C. C. A.) 134 F. 1, 2 (9), 69 L. R. A. 232; 37 C. J. "Limitations," § 149;

57 C. J. "Set-Off," § 17. It would be otherwise if Bernstein were attempting to set off some demand arising out of another transaction. Such a demand, if not barred, could only claim a dividend along with other creditors, while the debt for the capital stock would have to be paid in in full. John W. Cooney Co. v. Hotel Co., supra. Bernstein claimed no set-off but only that what he paid the corporation exceeded in value what it had paid under the same contract, including the stock at par.

Judgment affirmed.